UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HEIDI STUMBO,

                        Petitioner,                        **DECISION AND ORDER**

              v.                                  1:19-CV-00150 EAW

SUPERINTENDENT LAMANNA,
Supt. Of the B.H.C.F.,

                         Respondent.
_____

## INTRODUCTION

*Pro se* petitioner Heidi Stumbo ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that she is being unconstitutionally detained in the custody of respondent the State of New York ("Respondent"). (Dkt. 1). Petitioner is incarcerated pursuant to a judgment entered against her on March 20, 2015, in the Ontario County Court, located in Canandaigua, New York. (*Id.* at 1). Petitioner was sentenced to an aggregate term of 13 years on a conviction for first degree criminal possession of a controlled substance, fourth degree criminal possession of stolen property, tampering with physical evidence, and third degree hindering prosecution, in addition to five years of post-release supervision. (*See* Dkt. 1 at 1; Dkt. 11 at 1; Dkt. 11-4 at 986-87).

Petitioner contends she is being held in violation of her constitutional rights, for the following reasons: (1) she was denied effective assistance of counsel when her counsel elicited on cross-examination that she had a prior felony drug conviction despite a *Sandoval* ruling prohibiting the prosecution from inquiring into the underlying facts of the conviction

(ground one)[1] and when her counsel conceded Petitioner's guilt as to the charge of first degree possession of a controlled substance during summation (ground four); (2) the submission of her phone calls at trial were in violation of clearly established law (ground two);[2] and (3) the prosecutor made improper comments during trial and summation (ground three).  (Dkt. 1 at 6-7).  For the reasons discussed below, the Court finds that Petitioner has not shown she is entitled to federal habeas relief.

## BACKGROUND

### I.   Underlying Crime and Indictment

On May 14, 2014, pharmacist Thomas Nguyen and pharmacy Technician Kelly Sherwood were working at a CVS store located in Farmington, New York.  (Dkt. 11-4 at 362-65, 378-79, 431).  At around 6:00 p.m., a man wearing a hooded sweatshirt with a cloth covering most of his face forced his way into the pharmacy area, approached Sherwood, and asked "Where's your drugs? Where's your Percocet?"  (*Id.* at 365-70, 378-82).  Nguyen drew the man away from Sherwood and directed him to a safe containing various prescription narcotics.  (*Id.* at 383).  Nguyen opened the safe and the man grabbed a variety of narcotic drugs, which he placed inside a bag before leaving the pharmacy.  (*Id.* at 387-90).

---

[1]    The numbered grounds refer to the grounds for habeas relief as organized by Petitioner in her Petition.  (*See* Dkt. 1 at 6-7).

[2]    In her reply to Respondent's opposition to the Petition, Petitioner "agree[d] to dismiss her challenge to the admission of her recorded phone conversation. . . ."  (Dkt. 12 at 4).  Accordingly, the Court does not reach the merits of whether this claim entitles Petitioner to habeas relief.

After fleeing the CVS, the man ran past a nearby office building where office manager Joanna Rease observed him carrying two plastic bags. (*Id.* at 400, 404-08). Rease saw the man drop one of the bags to the ground as he ran through a vacant lot next to the office building. (*Id.* at 408). The man then ran across Route 96 towards a motel on the south side of the road, where Rease lost sight of him. (*Id.* at 410-11). After police arrived, Rease entered the vacant lot and picked up the discarded bag, which she discovered was empty. (*Id.* at 408-13).

That evening, a Canandaigua City Police Department detective called Ontario County Sheriff's Department Investigator John Falbo ("Investigator Falbo"), stating that an individual named Matt Zanghi ("Zanghi"), who lived at the America's Best Value Inn located across the street from the CVS, claimed to have information regarding the man who robbed the store. (*Id.* at 429). Thereafter, Investigator Falbo met with Zanghi who stated that a person named "Jake," who occupied Room 216 at the America's Best Value Inn, offered to sell him prescription pills earlier that evening. (*Id.* at 430). After Zhanghi told "Jake" that he did not want to buy any pills, "Jake" went "off into the woods with a bag." (*Id.* at 430). Investigator Falbo learned that "Jake" was Jacob Moore ("Moore") who was on parole. (*Id.*).

Investigator Falbo arranged to meet Moore's parole officer at Room 216 later that evening. (*Id.* at 431). When Falbo arrived at Room 216, the parole officer was already inside speaking with Moore. (*Id.*). Before entering the room, Falbo noticed a set of "muddy footprints" leading from "the woods . . . directly towards the room." (*Id.*). Just outside the door, Falbo found a prescription label from a bottle of oxycodone pills on the

ground.  (*Id.* at 431-32).  Inside the room, Falbo observed wet, muddy clothing hanging from the shower curtain rod.  (*Id.* at 432).  Moore was placed under arrest for a parole violation.  (*Id.* at 433).

During a subsequent search of the area around the motel, police officers recovered a plastic bag filled with a set of clothing, including a pair of green cargo shorts similar in appearance to the shorts that Investigator Falbo had seen the robber wearing on a surveillance video from CVS.  (*Id.* at 433).  On the roof of the motel, just outside the door to Room 216, police officers recovered a bottle of prescription bills bearing a lot number that matched one of the lot numbers of the stolen pills.  (*Id.* at 434).  The next morning, during an additional search of the area, police officers recovered a blue sweatshirt, a white long-sleeve shirt that "had the arms tied as if somebody were to wear it like a . . . mask around their face," and "packets of literature that belonged to the . . . stolen narcotics bottles."  (*Id.* at 435).

After Moore's arrest, police officers began monitoring his phone calls at the Ontario County Jail.  (*Id.* at 436-38).  The officers learned that Moore was engaging in telephone calls with his mother, Petitioner.  (*Id.* at 438-39).  Despite audio notifications to Moore and Petitioner that the calls were subject to police monitoring and that Petitioner's location might be tracked (*id.* at 436-38), Moore and Petitioner engaged in a series of incriminating conversations using thinly disguised, coded language (Dkt. 11-3 at 290-307).

During the first call which took place on May 15, 2014, the day after the robbery, Moore instructed Petitioner not to "mention to . . . [Petitioner's] guy the fact that [Moore was] in jail" because to do so might "get [Moore] hurt" or "get [him] ripped off."  (*Id.* at

288).  Moore told Petitioner, "I hope you didn't already do that," and Petitioner replied,

"No."  (*Id.* at 286).  Moore then asked Petitioner, "So, did you get that taken care of this

morning?"  (*Id.* at 288).  Petitioner told Moore that she was, at that moment, "walking on

the side of the road looking for it."  (*Id.* at 289).[3]

Approximately four hours later, Petitioner called Moore and told him, "I can't find

the bag."  (*Id.* at 294).  Moore asked, "How is that possible?" and Petitioner replied,

"Maybe I'm not in the right spot.  I'm trying to visualize it from last night, but I can't seem

to get it."  (*Id.* at 294).  Petitioner stated that she would "look some more," and Moore

instructed her to go "past the race track" on Route 96, turn right at the second stop light,

and then look for a "red barn" opposite a "shrubbery" where she would find the hard hat.

(*Id.* at 295-98).

Later that day, Police Sergeant David Cirencione ("Sergeant Cirencione")

encountered Petitioner outside Moore's motel room.  (Dkt. 11-4 at 537-39).  Petitioner told

Sergeant Cirencione that she was there to gather her son's belongings.  (*Id.* at 540).

Sergeant Cirencione told Petitioner that she could not enter the room because it was being

secured in connection with a police investigation into the robbery at the CVS and Petitioner

replied that she had "information that she thought could help" the investigation.  (*Id.* at

540-41).  Sergeant Cirencione contacted Sheriff's Investigator Lee Martin ("Investigator

---

[3]     Tracking information logged by the jail phone system indicated that, during the call,
Petitioner's cell phone was located in the vicinity of Shortsville Road, east of Route 332,
in the Town of Farmington.  (Dkt. 11-4 at 600).

Martin") who arrived at the motel to speak with Petitioner a short time later.  (*Id.* at 541-42, 602).

Petitioner told Investigator Martin that, the prior evening, Moore had called her saying that he was "stressed out" and that he wanted Petitioner to meet him at a restaurant next to the motel.  (*Id.* at 615).  When Petitioner arrived in the parking lot, Moore "jumped over the fence and jumped into her car and told her that he had just robbed the CVS."  (*Id.* at 602).  Moore was carrying a bag in his hand and Petitioner told him that she "didn't want anything to do with it and [Moore] needed to get rid of what he had taken."  (*Id.* at 603).  Petitioner and Moore drove east on Route 96 and then turned onto County Road 28, where Moore got out of the car with the bag and returned "one or two minutes" later with mud on his shoes and "without the bag."  (*Id.* at 603-04).  Petitioner and Moore returned to the motel and saw police cars near Moore's motel room.  (*Id.* at 604).  Petitioner dropped Moore off in the parking lot of a KFC restaurant near the motel, telling him to "get out of the car and take care of his problems and . . . [to] call her later to [let her] know that he was okay."  (*Id.*).

At Investigator Martin's request, Petitioner agreed to assist in locating the stolen pills.  (*Id.* at 605).  Investigator Martin, Sergeant Cirencione, Petitioner, and several other police officers drove around the Farmington area where they eventually came across an orange helmet on the shoulder of County Road 28, approximately five miles from the CVS and the America's Best Value Inn.  (*Id.* at 606-08).  The police officers searched the area near the helmet and discovered a bag containing 1,142 prescription pills.  (*Id.* at 468,

564-66, 607).   Petitioner thereafter made a sworn, written statement reiterating the oral statements she had made to Investigator Martin earlier that day.  (*Id.* at 612-16).

At 5:26 p.m., Petitioner called Moore and told him that the police had been listening to their conversation and that they "got the bag.  They got everything."  (Dkt. 11-3 at 300-02).  Moore replied, "Well, I'm beyond fucked now."  (*Id.* at 302).  Two days later, on May 17, 2014, Petitioner called Moore.  (*Id.* at 301).  Moore asked Petitioner what she had told the police and added, "I was hoping you'd say something like I was giving you directions so you could get the stuff and return it."  (*Id.* at 303-04).  Petitioner stated that she had told the police that Moore had intended to "turn [the] drugs in and get credit for it," but that the police said that "they heard the whole conversation and they knew [Petitioner] was picking [the drugs] up to sell [them]."  (*Id.* at 304).  Moore told Petitioner, "I never said you were picking it up to sell it," and Petitioner replied, "Yeah, but I told you that I had a customer up in the city all ready to buy 'em."  (*Id.*).  Moore told Petitioner that he had stolen the drugs because, among other things, he "was trying to take care of [Petitioner]."  (*Id.* at 303).  Petitioner replied, "I feel bad because I know some of the stuff that you got is stuff that I like.  So, I know that you were trying to help me out and I feel terrible about it."  (*Id.* at 305).

Petitioner was indicted by a grand jury with criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, criminal possession of stolen property in the fourth degree, hindering prosecution in the third degree, and tampering with physical evidence.  (Dkt. 11-3 at 90-92).  Petitioner

entered a plea of not guilty to the crimes, and the case proceeded to trial.  (*See* Dkt. 11-4 at 53).

## II.   **Pre-Trial and Trial**

At the pre-trial *Sandoval* hearing, the prosecutor requested that he be allowed to question Petitioner regarding a 1992 conviction in California for "trafficking drugs."  (Dkt. 11-4 at 7).  The prosecutor specifically requested that he be able to ask Petitioner if she "was convicted of a felony and sentenced to jail and probation on that occasion" as a *Sandoval* compromise.  (*Id.*).  The trial court granted the prosecutor's request and ruled that he could ask Petitioner "if in fact she was convicted of a felony in California in 1992 and she was sentenced to three year's probation and 240 days in jail."  (*Id.* at 10).  The trial court further clarified that the prosecution was prohibited from "inquir[ing] into the nature of the felony or the underlying facts surrounding the felony."  (*Id.* at 12).

On March 3, 2015, a jury trial commenced before Ontario County Court Judge William F. Kocher.  (*Id.* at 1).  On direct examination by her counsel, Petitioner was asked whether she had "a prior conviction, drug-related conviction or anything from 1990?"  (*Id.* at 710).  Petitioner confirmed that she had such a conviction "[t]wenty-five years ago."  (*Id.*).  On cross-examination, the prosecutor asked Petitioner to correct her prior answer that her drug conviction was twenty-five years ago, "[i]n fact, it was—just to be technically correct—in 1992, which would be twenty-three years ago, right?  In Riverside, California?"  (*Id.* at 713).

Following the trial, the jury returned a verdict of guilty on the first degree criminal possession of a controlled substance, fourth degree criminal possession of stolen property,

tampering with physical evidence, and third degree hindering prosecution charges. (Dkt. 11-3 at 144-45). The jury acquitted Petitioner of third degree criminal possession of a controlled substance. (*Id.* at 145). On March 20, 2015, Petitioner was sentenced, as a second felony offender, to the following: for the first degree criminal possession of a controlled substance conviction, a prison term of 13 years followed by a five-year term of post-release supervision; for the fourth degree criminal possession of stolen property and tampering with physical evidence convictions, prison terms of two to four years; and for the third degree hindering prosecution conviction, a prison term of one year. (Dkt. 11-4 at 986-87). The sentences were set to run concurrently. (*Id.* at 987).

## III.   <u>Direct Appeal</u>

Petitioner appealed from the judgment, arguing: (1) she was denied effective assistance of counsel due to cumulative errors by her counsel; (2) she was deprived of a fair trial due to prosecutorial misconduct; (3) the verdict convicting Petitioner of first degree criminal possession of a controlled substance was contrary to the weight of the evidence; and (4) her sentence for first degree criminal possession of a controlled substance was unduly harsh and excessive. (Dkt. 11-3 at 3-78). Petitioner also submitted a *pro se* supplemental brief, arguing: (1) her right to confrontation was violated when the prosecution admitted hearsay; (2) her trial was fundamentally unfair due to the improper submission of phone calls which were illegally traced and violated her Fifth Amendment right against incrimination; (3) the prosecution failed to lay a proper foundation for the submission of illegally obtained phone calls; and (4) counsel's deficient performance and failure to object prevented the preservation of critical arguments. (*Id.* at 159-88). On

November 9, 2014, the Appellate Division, Fourth Department, unanimously affirmed the judgment. *See People v. Stumbo*, 155 A.D.3d 1604 (4th Dep't 2017). Petitioner filed a counseled leave application to the Court of Appeals, but limited the application to the ineffective assistance of counsel claim. (*Id.* at 282-85). The New York Court of Appeals denied leave to appeal on February 13, 2018. *People v. Stumbo*, 30 N.Y.3d 1120 (2018).

## IV.   **Habeas Petition**

On January 28, 2019, Petitioner, proceeding *pro se*, filed the instant Petition for Writ of Habeas Corpus asserting: (1) she was denied effective assistance of counsel when her counsel elicited on cross-examination that she had a prior felony drug conviction despite a *Sandoval* ruling prohibiting the prosecution from inquiring into the underlying facts of the conviction (ground one) and when her counsel conceded Petitioner's guilt as to the charge of first degree possession of a controlled substance during summation (ground four); (2) the submission of her phone calls at trial were in violation of clearly established law (ground two); and (3) the prosecutor made improper comments during trial and summation (ground three). (Dkt. 1 at 6-7). Petitioner also filed a motion for leave to proceed *in forma pauperis* and a motion to appoint counsel. (Dkt. 2; Dkt. 3). On February 14, 2019, Petitioner filed an amended motion for leave to proceed *in forma pauperis*. (Dkt. 4).

On April 5, 2019, the Court issued an Order denying as moot Petitioner's first *in forma pauperis* motion (Dkt. 2), denying without prejudice as premature Petitioner's motion to appoint counsel (Dkt. 3), and granting Petitioner's amended motion to proceed *in forma pauperis* (Dkt. 4). The Court also set a scheduling order for Respondent to answer

the Petition.  (Dkt. 5).  On August 30, 2019, Respondent filed an Answer to the Petition and a memorandum of law in support of its Answer.  (Dkt. 11).  On September 30, 2019, Petitioner filed a reply in response to Respondent's Answer.  (Dkt. 12).

## DISCUSSION

## I.  Legal Standard

"Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  *Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) (quotation omitted). "The question is 'not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so.'"  *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 367 (E.D.N.Y. 2013) (quoting *Ryan v. Miller*, 303 F.3d 231, 245 (2d Cir. 2002)).  "The petition may be granted only if 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'"  *Id.* (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## II.  Petitioner's Ineffective Assistance of Counsel Claim

Petitioner argues that she was denied effective assistance of counsel because her attorney elicited that Petitioner's prior felony conviction was for a drug-related offense (ground one) and conceded Petitioner's guilt of first degree criminal possession of a

controlled substance during summation (ground four).  (Dkt. 1 at 6, 7).  For the reasons that follow, the Court denies the Petition as to this claim.

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).  "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that h[er] counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). A court need not address both components of the *Strickland* inquiry if a petitioner makes an insufficient showing on one.  *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018) ("[T]he object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (quoting *Mitchell v. Schully*, 746 F.2d 951, 954 (2d Cir. 1984)).  Where a state court has rejected the ineffective assistance of counsel claim, a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt" applies on federal habeas review.  *Burt v. Titlow*, 571 U.S. 12, 15 (2013).  "[T]he burden to show that counsel's performance was deficient rests squarely on the defendant. . . .  [T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Burt*, 571 U.S. at 22-23 (quotations and original alterations omitted).

### A.   <u>Counsel's Single Reference to Petitioner's Prior Felony Drug Conviction</u>

Petitioner argues that her trial counsel was ineffective for eliciting that her prior felony conviction was for a drug-related offense, notwithstanding that the trial court had precluded the prosecutor from eliciting such information in its *Sandoval* ruling. (Dkt. 1 at 6). According to Petitioner, the improper questioning rendered the trial fundamentally unfair. (*Id.*). Respondent contends that to the extent that counsel erred in his questioning, "the error was not 'sufficiently egregious and prejudicial' to render counsel's overall representation of petitioner constitutionally deficient." (Dkt. 11-1 at 18). The Court agrees.

To establish *Strickland* prejudice, Petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A petitioner "must show that [s]he was deprived of a fair trial, a trial whose result is reliable." *Garner*, 908 F.3d at 862. "The prejudice inquiry is therefore ineluctably tied to the strength of the prosecution's evidence." *Id.* "[A] verdict or conclusion with ample record support is less likely to have been affected by the errors of counsel than 'a verdict or conclusion only weakly supported by the record.'" *Id.* (quoting *Gen. Waiters v. Lee*, 857 F.3d 466, 480 (2d Cir. 2017)). "As a result, '[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.'" *Id.* (quoting *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001)).

The Fourth Department rejected Petitioner's contention that she was denied effective assistance of counsel when counsel questioned her regarding her prior drug felony conviction because the error "was not so egregious and prejudicial that it deprived [Petitioner] of her right to a fair trial." *Stumbo*, 155 A.D.3d at 1605 (internal quotation marks, alterations, and citations omitted).  The Fourth Department noted that the conviction was only referenced twice, once by defense counsel on direct examination and once by the prosecutor on cross-examination.  (*Id.*).  "No mention of it was made by the prosecutor on summation, and the jury was never told of the underlying facts of the conviction, which was 23 years ago." *Id.*  The Fourth Department ultimately concluded that Petitioner was "afforded meaningful representation." *Id.*

The Court concludes that this isolated error was not so egregious and prejudicial in light of the overwhelming evidence against Petitioner.  At trial, Investigator Martin testified that Petitioner had admitted to him that as soon as she picked up her son, he immediately told her that he had just robbed the CVS pharmacy (Dkt. 11-4 at 602-03), which Petitioner confirmed on direct examination (*id.* at 725-26).  Petitioner also testified that her son had almost immediately told her that the bag he was carrying contained the stolen pills.  (*Id.* at 732, 769).  Petitioner also acknowledged that she drove her son five miles away from the scene of the robbery and pulled over near some brush to let him out to hide the stolen drugs.  (*Id.* at 769-770).  Petitioner testified that shortly after returning to the car, at her son's request, she agreed to go back and retrieve the drugs.  (*Id.* at 741-43).  Moreover, in subsequent recorded telephone calls, Petitioner told her son that she had in fact been looking to retrieve the drugs.  (Dkt. 11-3 at 288-89, 291, 294-10).  Petitioner had

- 14 -

also stated that the "stuff" her son stole was the stuff she liked.  (*Id.* at 305).  Most significantly, Petitioner had stated that the police "knew [she] was picking [the drugs] up to sell [them] . . . [and that she] had a customer up in the city all ready to buy 'em."  (*Id.* at 304).

In light of the overwhelming evidence supporting Petitioner's conviction, Petitioner has not met the second prong of the *Strickland* test as she has not proven that but for her counsel's single reference to the prior felony drug conviction, the result of the trial would have been different.  *Cf. Morrison v. McCray*, No. 09-CV-126, 2011 WL 1085306, at *6 (W.D.N.Y. Mar. 21, 2011) (counsel not ineffective for failing to object to prosecutor's violation of *Sandoval* ruling where "in the context of the entire trial . . . the improper question was not so prejudicial that, but for counsel's failure to object, the outcome of petitioner's trial would have been different."); *see also People v. Reitz*, 125 A.D.3d 1425, 1425 (4th Dep't 2015) ("Although we agree with defendant that defense counsel should not have questioned him about a prior conviction after County Court's *Sandoval* ruling precluded the People from doing so, we conclude that defense counsel's error was 'not so egregious and prejudicial that [it] deprived defendant of his right to a fair trial.'" (citations omitted)).  Petitioner is not entitled to habeas relief on this ground.

### B.   Counsel Did Not Admit Petitioner's Guilt as to the Criminal Possession of a Controlled Substance in the First Degree Charge

Petitioner also contends that her counsel was ineffective because, during his summation, he admitted that Petitioner was guilty of criminal possession of a controlled

substance in the first degree.  (Dkt. 1 at 7).  Petitioner cites the following statement by her

counsel:

> On May 14th 2014 this defendant, Heidi Stumbo, possessed narcotics in
> Ontario County.  She knew she had them.  Her son got in the car with a bag
> full of drugs that he just robbed from CVS that was right across from his
> hotel.  This defendant right here, she did it.  Overwhelming proof.  That
> gesture, and all the witnesses you've seen paraded in front of you, are the
> avalanche that this case represents against [Petitioner].

(Dkt. 11-4 at 837-39).  Immediately following this description of the prosecution's case,

counsel stated:

> no matter how flat the pancake, there's always two sides to the story and now
> you're hearing the other side of the story.  And you're hearing somebody
> give an opinion, a different opinion or interpretation of those facts that were
> allegedly testified to by the avalanche that has been against [Petitioner] from
> the beginning of this investigation.

(*Id.* at 838).

Counsel then spent the remainder of his summation vigorously rebutting the

prosecution's case as to the criminal possession charge.  Specifically, counsel described

how Petitioner drove Moore for just a few miles and immediately directed Moore to get rid

of the drugs, which was inconsistent with an intent to secret the drugs.  (*Id.* at 839 ("If she

wanted to secret the drugs, just think how far she could have went or where she would have

went.  Anywhere.  This is all swamp area.  She would have went to another county, to

another state, she would have brought them to her house, anywhere.")).  Counsel also cited

to evidence that Petitioner did not knowingly possess the drugs on May 14th, the day of

the robbery.  (*Id.* at 841 ("What did she do to exercise dominion and control? . . .  Did she

tell him to bring them to the police station?  No.  Did she tell him to 'Give me the drugs.

I'm going to bring them to the police station?'  No."), 846 ("Did she go back there that night?  No.  She could have.  And if she would have went back there that night, there would have been the mud on the shoes, mud in the car, somebody would have saw her.  They were looking all over that area.")).  Moreover, counsel concluded his summation with a request that the jury acquit Petitioner on "*all* counts of the indictment."  (*Id.* at 857 (emphasis added)).  As such, viewing counsel's statement in the context of his entire summation, it is apparent to the Court that counsel did not admit Petitioner's guilt.  Instead, he simply described the landscape of the prosecution's case for rhetorical effect before attempting to thoroughly rebut it.  (*See id.* at 838 ("[N]o matter how flat the pancake, there's always two sides to the story and now you're hearing the other side of the story.")).  Accordingly, this claim does not entitle Petitioner to habeas relief.[4]

## III.  Petitioner's Prosecutorial Misconduct Claim

Petitioner contends that the prosecutor committed misconduct by improper comments during trial and summation.  (Dkt. 1 at 7).  Respondent argues that this claim is unexhausted and procedurally defaulted or, alternatively, barred from habeas review on independent and adequate state law grounds.  (Dkt. 11-1 at 23-24).

---

[4]   Tactical decisions such as trial strategies are reserved to the sound discretion of counsel.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983) (stating that tactical decisions are left to counsel's professional judgment); *Faretta v. California*, 422 U.S. 806, 820 (1975) ("[W]hen a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy.").  In light of the evidence before the jury, including Petitioner's own testimony, counsel surely knew it would be difficult to take the position that Petitioner had never possessed the drugs, even momentarily.  As such, counsel's concession that Petitioner briefly possessed the drugs with the qualification that she never intended to secret the drugs was a reasonable exercise of counsel's discretion.

28 U.S.C. § 2254, requires persons "in custody pursuant to the judgment of a State court" to "exhaust[] the remedies available in the courts of [that] State" before a federal court may grant them relief. *Picard v. Connor*, 404 U.S. 270, 271 n.2 (1971); *see, e.g.*, *Daye v. Attorney General*, 696 F.2d 186, 190-91 (2d Cir. 1982) ("The federal habeas corpus statute . . . embodies the long-established principle that a state prisoner seeking federal habeas review of his conviction ordinarily must first exhaust available state remedies."). "Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained." *Hogan v. Ward*, 998 F. Supp. 290, 293 (W.D.N.Y 1998) (citing *Daye*, 696 F.2d at 190 n.3); *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999) (holding that a state prisoner must present his claims to the highest state court in a petition for discretionary review in order to satisfy the exhaustion requirement of § 2254).

Petitioner asks the Court to excuse her failure to exhaust, which she contends is the result of "appellate counsel's shortcomings." (*See* Dkt. 12 at 6). There are only two grounds upon which exhaustion may be excused: (1) if "there is an absence of available State corrective process," or (2) if "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). "When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' . . . if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile. In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). "Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be

raised in habeas only if the petitioner can demonstrate either 'cause' and actual 'prejudice,' or that [s]he is 'actually innocent.'" *Danielson v. Lee*, 715 F. App'x 45, 47 (2d Cir. 2017) (quoting *DiSimone v. Phillips*, 461 F.3d 181, 190-91 (2d Cir. 2006)).

Petitioner avers that her claim is unexhausted due to "appellate counsel's shortcomings," but provides no further details.  (*See* Dkt. 12 at 6).  Appellate counsel's failure to preserve a claim may constitute "cause" sufficient to excuse procedural default.  *See Aparicio*, 269 F.3d at 91.  "However, in order to determine whether the alleged ineffective assistance of appellate counsel constitutes 'cause' to excuse the procedural default, the Court must first determine whether appellate counsel's performance was, in fact, unconstitutionally deficient." *Carroll v. David*, No. 9:04-CV-0307, 2009 WL 666395, at *9 (N.D.N.Y. Mar. 11, 2009) (citing *Aparicio*, 269 F.3d at 91).  "The ineffective assistance of appellate counsel claim will not constitute cause to excuse the procedural default with regard to the prosecutorial misconduct claims unless Petitioner" satisfies the *Strickland* two-part test.  *Id.* at *10 ("In other words, the ineffective assistance of appellate counsel claim will only constitute cause sufficient to excuse the default with respect to the prosecutorial misconduct claim if the ineffective assistance claim is itself meritorious.").  "To establish that appellate counsel rendered effective assistance, a petitioner must do more than simply demonstrate that counsel omitted a non-frivolous argument, because appellate counsel is not required to raise all potentially colorable arguments." *Id.* (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

Under New York law's contemporaneous objection rule, a question of law is not preserved for appellate review unless "a protest thereto was registered, by the party

claiming error, at the time of [the trial court's] ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same."   N.Y. Crim. Proc. L. § 470.05(2).   The failure to "register a timely, specific objection to each instance of alleged impropriety . . . renders the claims unpreserved and leaves the appellate court no basis to review the alleged prosecutorial misconduct."  *Carroll*, 2009 WL 666395, at *11.  "New York appellate courts consistently demand fairly strict compliance with the contemporaneous objection rule. . . ."  *Id.*

Based on a review of the trial transcript, trial counsel did not lodge a contemporaneous objection to the comments that are the subject of Petitioner's prosecutorial misconduct claim.  (*See* Dkt. 11-4 at 858-83).  The Fourth Department noted that Petitioner had "failed to preserve for . . . review her contention that she was deprived of a fair trial by prosecutorial misconduct," but concluded that Petitioner's arguments were nonetheless without merit.  As such, it appears that appellate counsel omitted reference to the prosecutor's comments in filing Petitioner's leave application to the Court of Appeals on the basis that trial counsel had failed to contemporaneously object to such comments, thereby precluding appellate review.

Under these facts, the Court finds that appellate counsel's decision not to raise this unpreserved claim does not render counsel's representation unconstitutionally ineffective. (*See* Dkt. 11-3 at 282-85); *see also Walker v. Ercole*, No. 08-CV-4204, 2011 WL 843966, at *10 (E.D.N.Y. Mar. 8, 2011) ("Appellate counsel cannot be deemed ineffective for raising unpreserved issues."); *Carroll*, 2009 WL 666395, at *11 (finding appellate counsel's decision not to raise prosecutorial misconduct did not amount to unconstitutional

ineffective assistance of counsel where the petitioner did not contemporaneously object to comments that were the subject of prosecutorial misconduct claims); *Clarke v. Goord*, No. 07-CV-0366 (BMC), 2007 WL 2324965, at \*6 (E.D.N.Y. Aug. 10, 2007) ("[P]etitioner failed to preserve the claim in violation of New York's contemporaneous objection rule.  It cannot be unreasonable for appellate counsel not to raise an unpreserved issue on appeal." (citation omitted)).  Although appellate counsel could have "raise[d] an unpreserved issue in the hope of convincing the appellate court to review the unpreserved issue in the exercise of its interest of justice jurisdiction," *Sutherland v. Senkowski*, No. 02-CV-3833, 2003 WL 22953066, at \*12 (E.D.N.Y. Oct. 17, 2003), Petitioner has not demonstrated that the result of her appeal would have been different, absent the alleged error by appellate counsel. Indeed, the Fourth Department rejected Petitioner's contention that the prosecutor's comments deprived her of a fair trial, finding that the comments "'were within the broad bounds of rhetorical comment permissible during summations . . . and they were either a fair response to defense counsel's summation or fair comment on the evidence.'"  *See Stumbo*, 155 A.D.3d at 1605 (citation omitted).

Even if Petitioner's prosecutorial misconduct claim was not procedurally barred, the state court's decision was not contrary to or an unreasonable application of clearly established Federal law.  "The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelley v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Relevant factors include whether the prosecutor "misstate[d] the evidence" or "implicate[d] other specific rights of the accused such as the

right to counsel or the right to remain silent." *Id.* at 182. "Prosecutorial misconduct during

summation is grounds for reversal only when the remarks caused 'substantial prejudice' to

the defendant." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United*

*States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir. 1989)). Petitioner must show that "the

prosecutor's comments constituted more than mere trial error, and were instead so

egregious as to violate [her] due process rights." *Tankleff v. Senkowski*, 135 F.3d 235, 252

(2d Cir. 1998).

Petitioner argues that the prosecutor improperly appealed to the emotions of the jury

based on the following statement:

> Now, even though this defendant has not accepted responsibility for the
> crimes that she committed, she is in fact responsible for those crimes and
> needs to be told that she is responsible for those crimes. In our society,
> actions have consequences. . . .  When we make conscious decisions,
> conscious choices to engage in certain activity, we are responsible for those
> choices, those actions, we owned them.  This defendant made a conscious
> choice, a conscious decision, to enable her son, Jacob Moore, to get away
> with th[ese] crimes, to get away with the proceeds of a brazen robbery. She
> made the conscious choice to drive him away in that scene and help her hide
> those drugs.  She even intended to sell those narcotics, as you've heard.
> She's responsible for those actions.  She's responsible for those choices.  And
> having made those choices and those actions, the time has come for her to be
> told that she is responsible for them.  The way that happens is by your verdict.
> Your verdict can tell her that she is responsible for what she chose to do.
> You can do that with a verdict of guilty.  Based upon all of the credible
> evidence in this case, her guilt has been established beyond a reasonable
> doubt and so I am asking you to please and respectfully return that verdict.

(Dkt. 11-4 at 882-83).  On direct appeal, Petitioner argued that the statement "cause[d] the

jurors to 'instead focus on [punishing the defendant],'" "deflect[ing] the jurors' attention

from issues of fact and the question of guilt or innocence."  (Dkt. 11-3 at 66).  However,

prior to the above statement, the prosecutor expressly reminded the jurors that they were

- 22 -

not punishing or sentencing Petitioner, but were rather acting as fact-finders to conclude that that Petitioner had "engaged in certain conduct" "based on the facts of the case." (Dkt. 11-4 at 882 ("And finally, let me just talk about punishment, what punishment this defendant might receive if you find her guilty. *You aren't punishing her. You aren't sentencing her if you find her guilty.* You are simply saying that, based on the facts in this case, we find that the defendant engaged in certain conduct. If you do that, it then becomes Judge Kocher's responsibility to fashion a fair and appropriate sentence after receiving a probation report on the defendant. That's his job, not yours. You've all agreed that you would abide by that instruction and I'm asking you again to abide by that instruction in your deliberations" (emphasis added))). Accordingly, viewing the prosecutor's statements as a whole, the Court finds that the quoted remark did not improperly urge the jurors to focus on punishing Petitioner nor did it cause the jurors to determine Petitioner's guilt not based on the evidence presented at trial.

The Court is also not persuaded by Petitioner's argument that the prosecutor improperly provided "his personal opinion about the evidence and grossly exaggerated it, essentially making him an unsworn witness." (Dkt. 1 at 7). In response to Petitioner's testimony that she had been "working on" locating the hidden drugs to turn them over to the police to help her son get "credit," the prosecutor stated, "Well, sorry, a minute ago you told us that contrary to what you said to your son about twenty-five times, you never actually did go out there and look for these drugs." (Dkt. 11-4 at 761). On direct appeal, Petitioner argued that this comment was evidence that the prosecutor "improperly gave his personal opinion about the evidence, which was grossly exaggerated." (Dkt. 11-3 at 69).

- 23 -

According to Petitioner, "[i]nstead of the jury making its own assessment of how many times and how significant [Petitioner's] statement to Mr. Moore were in the telephone conversation, the prosecutor made that assessment . . . which essentially made him an unsworn witness." (*Id.*). In the transcripts of the recorded phone calls with her son, Petitioner repeatedly told her son that she had been looking for the drugs without success. (Dkt. 11-3 at 288, 289, 292, 294, 295-97, 299). As such, to the extent that Petitioner did not actually make this statement literally twenty-five times, the prosecutor's comments was within the permissible bounds of rhetoric. Accordingly, this claim does not entitle Petitioner to habeas relief.

## **CONCLUSION**

For the foregoing reasons, the Court denies the Petition for Writ of Habeas Corpus (Dkt. 1). The Clerk of Court is instructed to close this case. Further, because Petitioner has not made "a substantial showing of the denial of a constitutional right," *see* 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. In addition, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 35 of the Federal Rule of Appellate Procedure.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:        August 27, 2020
              Rochester, New York